No 2,192

T. J. A. CHAMBERS, PLAINTIFF AND RESPONDENT, v. JOHN SATTERLEE *et al.*, DEFENDANTS AND APPELLANTS.

PRIVATE PROPERTY TAKEN FOR PUBLIC USE.—CONSTITUTIONAL CONSTRUCTION. The last clause of Section 8, Article 1, of the Constitution, which provides that no "property shall be taken for public use, without just compensation," has no application to assessments for street work, in the City and County of San Francisco, under the Consolidation Act as amended in 1862 and 1863.

IDEM.—ASSESSMENT FOR STREET WORK NOT "TAXATION."—An assessment for street work in the City and County of San Francisco, under the Consolidation Act, *is not "taxation," within the* meaning of the 13th Section of Article 11 of the Constitution.

IDEM.—CONSOLIDATION ACT.—It is competent for the Legislature to provide for the expenses of public improvement, either by general taxation upon the property of all the inhabitants of the county or town in which they are made, or upon property adjacent thereto, and specially benefitted thereby; and in these respects, the constitutionality of the Consolidation Act must be considered definitely established.

CITY AND COUNTY OF SAN FRANCISCO.—ALTERATION OF STREET GRADE.—It did not require the signatures of the persons composing the Board of Engineers, to be attached to the maps and profiles prepared under the Statute of 1863-4, to establish the lines and grades of streets in the City and County of San Francisco in order that they should become valid. Their approval by the Board of Supervisors was sufficient for that purpose.

CAL. REP. XL.—32.

Points decided.

IDEM.-BOARD OF SUPERVISORS.-PUBLICATION OF NOTICE OF INTENTION TO ORDER STREET WORK.—A resolution of the Board of Supervisors, directing a publication of a notice of intention for street work, for ten days from and after a particular date, the publication of which was not in fact commenced until two days after the time fixed in the resolution, but was then made for the legal period of ten days, was a substantial compliance with the provisions of the law.

IDEM.-STREET CONTRACTS.—ASSESSMENT TO "UNKNOWN OWNERS."—An assessment on property for street work, made by the Superintendent of Streets to "unknown owners," amounts to an official certificate by the proper officer, that the owner of the particular lot designated was unknown to him. The certificate is conclusive of the truth of the fact so certified, and cannot be collaterally called in question in an action brought upon the assessment.

IDEM.—STREET CONTRACT.—REMEDY OF AGGRIEVED PARTY.—Where a contract for street work, entered into by the Superintendent of Streets, is not in compliance with the resolution of the Board of Supervisors, by which it is authorized, the remedy for the aggrieved party is by appeal to the Board, and failing to avail himself of that remedy, he cannot, afterward, set up such irregularity as a defense to an action to recover the amount of the assessment.

IDEM.—STATUTORY CONSTRUCTION.—JURISDICTION UNDER CONSOLIDATION ACT. It was the intention of the statute authorizing street improvements in the City and County of San Francisco, to leave open for judicial inquiry all questions of a jurisdictional character, and to submit all other questions to the decision of the Board of Supervisors.

Per TEMPLE, J., concurring:

IDEM.—PUBLICATION OF NOTICE OF INTENTION TO ORDER STREET WORK.—The provisions of the statute which authorizes the Board of Supervisors to order street work to be done after notice of their intention to order the work has been published for ten days, requires the notice to be given by the Board itself, and the publication required can only be made by their authority.

IDEM.—EXERCISE OF POWER BY THE BOARD OF SUPERVISORS.—After the Board has acquired jurisdiction to act, by due publication of the resolution of intention, they must still exercise their power in the mode prescribed by law.

IDEM.—STATUTORY CONSTRUCTION.—TAKING PRIVATE PROPERTY FOR PUBLIC USE.—In proceedings to divest individuals of their estates for public use, statutes must be construed strictly in favor of individual right; yet in the exercise of the powers conferred, which are to be used for the public good, they should be construed liberally, so far as it is necessary to render their execution practicable.

Per CROCKETT, J., concurring:

IDEM.—CONTRACT FOR STREET WORK.—SPECIAL AGENCY.—In entering into a written contract for the performance of street work, ordered by resolu-

tion of the Board of Supervisors, the Superintendent of Streets becomes *pro hac vice*, the special agent of the Board, with authority to execute the contract which has been awarded, and no other or different contract.

IDEM.—SPECIAL AGENT.—ACT OF.—IN EXCESS OF AUTHORITY.—An Act performed by a special agent in excess of his authority, which is divisible in its nature, so that the part which he was authorized to perform can be separated from the rest, without injury to the principal; the latter will be bound by it so far as he authorized it, and it will be void only for the excess.

IDEM.—CONTRACT FOR STREET WORK.—A contract entered into by the Superintendent of Streets, under a resolution of the Board of Supervisors, ordering a street to be graded to the official grade, but which provided, in addition, that the roadway should be graded one foot below the official grade, is divisible in its nature, and is valid to the extent that it is authorized by the resolution of the Board.

APPEAL from the Twelfth District Court, City and County of San Francisco.

Defendants appeal from the judgment and from the order denying a new trial. Action to recover an assessment for alleged improvements on Van Ness Avenue, in the city of San Francisco, from Clay street to Pacific street.

The complaint alleges that the Board of Supervisors passed a resolution of intention to grade the avenue as above named, which resolution was signed and published for ten days, etc. The resolution was passed July 29th, 1867, the publication began July 31st, 1867. August 12th a resolution providing for the work was passed; August 14th notice inviting sealed proposals was given; September 2d, 1867, the contract was awarded to B. the lowest bidder, and notice of the award was duly published September 19th, 1867, the Superintendent of Streets entered into a written contract with B. with specifications, etc., to do the work. It specified that the work was to be done in a good and workmanlike manner, to the satisfaction and under the direction of the Superintendent, and that the Superintendent shall make an assessment, and attach a warrant as provided by law for the expenses of the work. It was specified that the City should not be held liable for the work, nor for any delinquency of the persons or property assessed; nor should the Superintendent or his bondsmen in any event be liable.

The specifications were as follows: "*Specifications*—For grading Van Ness Avenue, from Clay to Pacific street. The above named portion of Van Ness Avenue to be graded to the official height and line, except the roadway, which is to be graded 12 inches below the official grade, and when completed, is to have a crown to the centre of eighteen (18) inches from the bottom of the gutterways. The work is to be commenced within (20) twenty days, and completed within two hundred (200) days from the date of contract."

The complaint then alleges that B. did and completed all the work according to the terms of the contract and specifications, and under the direction and to the satisfaction of the Superintendent, who approved the work, assessed and apportioned the whole amount of the expense, upon the lots and the lands fronting on said work, and upon each lot separately in proportion to its frontage on said work" and on said main street, which assessments briefly referred to the contract, the work contracted for and performed, and showed the amount to be paid therefor, the incidental expense, the rate per foot assessed, the amount of each assessment, the name of the owner of each lot assessed when known, and when the name was unknown, the word 'unknown' was written opposite the number of the lot, and said assessment was signed by the Superintendent, and had a diagram attached thereto showing the street crossings, etc. Which assessment was attached to the warrant, etc.

That the lots described in the complaint were assessed to "unknown" owners, etc. That defendants were, and are the owners of such lots in fee.

October 7th, 1868, the Superintendent issued his warrant and delivered it with the assessment and diagram to B., "which warrant was signed by said Superintendent, and countersigned by H. M. Hale," City Auditor in his official capacity. October 7th, 1868, demand for payment was made upon the land. February 17th, B. assigned to Mc-L. who in turn assigned to plaintiff, March 14.

That no person appealed to the Board of Supervisors concerning any of the acts of the Superintendent.

The answer denies that publication of the resolution of intention was made; denies that it declared an intention to grade to the *official grade*, "but only to the grade." That the order of the Board did not say "official grade. That the Avenue was not graded to any official grade."

That there never was, nor is there now any declared or established official grade of or for the Avenue named. That the assessment was fraudulent as against defendants, and the property described.

That the Superintendent knew the defendants were owners of the land, and the ownership of one at least was of public repute.

That when the work was accepted, and the warrants issued, B. the plaintiff, and the Superintendent knew, that the Avenue had not been graded to any official grade; and that the acceptance and the issuance of the warrant were and are fraudulent. May 12, 1869, plaintiff by order of Court took judgment against the defendants.

The cause was tried by the Court without a jury.

Defendants moved for a new trial, which was denied.

The agreed statement shows that at the trial the plaintiff offered in evidence the warrant, assessment, diagram and return on the warrant. The return showed that demand was made on the property only and not on any one personally. Plaintiff rested.

Defendants moved for a nonsuit, because, 1st. The contract, etc., called for a grade one foot below the official grade, whereas the order authorizing the grading and the law permitted grading to the official grade only. 2d. That the real name of the plaintiff does not appear. The Court denied the motion.

Defendants proved that the assessment was not made upon any personal knowledge of the Superintendent, but was based on the certificate of the City and County Surveyor, which certificate was made only on the knowledge of a Deputy-Surveyor, who furnished the data to another Deputy

Surveyor, who made the calculations, etc., and reported the same to the Surveyor upon which he gave the certificate.

It was admitted that the property assessed to unknown owners by the Superintendent, was assessed by the City and County Assessor for the City and County of San Francisco to the estate of William S. Reese, deceased, for the years 1866, 1867 and 1868, and that during all that time John Satterlee, one of the defendants, was, and still is, administrator of said estate.

It was admitted by defendants that at the date of the assessment, there was a suit pending between the said administrator of Reese, deceased, and other parties respecting the property to be assessed in the present action as to its ownership; that at the time this suit was commenced, at the request of the administrator various persons were named as claimants of said property, and were made defendants in the present action, and that the suit above referred to has since been decided in favor of John Saterlee, and that the latter is the administrator and devisee of the property, and the owner of the fee

Defendants proved that the order of the Board, directing publication of notice of intention was for *grading* the Avenue, and that it was ordered that the notice be published ten days *"from and after its passage."* That the order was passed July 29th, 1867, and was not published until July 31st, 1867. That the order on which the warrant assessment, etc., is based called for the grading of Van Ness Avenue. That the profile establishing the lines and grades of streets, (Stats. 1863–4, p. 460) was not, and never had been signed by one Thaddeus R. Brooks, one of the "Board of City Engineers."

The defendants moved to vacate the findings for the following causes. 1. Insufficiency of the evidence etc. 2. The evidence shows the plaintiff not entitled to recover. 3. That the decision is against law because; (a) There is no official grade of the Avenue; (b) The profile was never signed by Brooks; (c) The notice of intention was not published for ten days from and after its passage; (d) That

the notice and order and the law called for, and authorized the grading to the official grade only; while the contract called for, and the grade was made, one foot below the official grade; (e) That the assessment to unknown owners was erroneous; (f) It was not sufficient to make demand upon the land alone; (g) The grading of the Avenue was not authorized, because there was no official grade established; (h) That the *prima facie* character of the evidence furnished by the warrant, assessment and diagram, is destroyed by the proofs and admissions that the assessment was made by the Superintendent on other than his personal knowledge; (i, lastly) That the "Act of the Legislature" and the laws and orders thereunder, were and are unconstitutional.

*Nathaniel Bennett,* of Counsel for Appellants.

*First*—The contract was for grading a street *one foot below the official grade*; the law authorized grading *to the official grade only*. The work done under such a contract therefore was without authority, and hence void; will refer to our argument of the same question in *Himmelman* v. *Byrne & Brodie,* in this Court.

A resolution by the Board of Supervisors, that a street be *graded,* is equivalent to a resolution that it be graded to the *official grade.* So held in *Emery* v. *San Francisco Gas Company,* (28 Cal. 376–7).

The resolution to *grade,* gave notice to property-owners only to that effect and extent, of the intent of the Board of Supervisors to have the street *graded* to the grade *established by law.*

The Superintendent of Streets can contract only for work ordered by the Board; if he exceed the order his authority is wanting, his acts are void. The Board having never declared its intention to grade one foot *below* the official grade, any contract entered into by the Superintendent so to do was null.

The Superintendent cannot be allowed to overstep the line prescribed by the Supervisors. (*Smith* v. *Davis*, 30 Cal. 536; and cases cited on p. 537.)

The contract is unauthorized, and hence void, also because it provides for a "crown in the center of fourteen inches, from the bottom of the gutterways." The official grade gives no such authorization, being a dead level from one side to the other. The position we take cannot come under the doctrine of *de miminis*.

We submit the contract is void, for want of authority in the Superintendent to make it. (Blackwell, 161–2, 2d, Ed., 1864; *People* v. *McCreery*, 34 Cal. 432; *Dougherty* v. *Hitchcock*, 35 Id. 512.)

It may be said our remedy is gone because we did not appeal to the Board. Appeals by Sec. 12 of the Amendment of 1863, provides for an appeal to the Board "*as to all errors and irregularities which said Board could have remedied and avoided.*" This is neither *error* nor *irregularity*. It is a want of power.

The Board could not have remedied or avoided it. The failure to appeal then, will not vitalize a void proceeding for want of power. (*Himmelmann* v. *Steiner*, Oct. T. Sup. Court, Cal. 1868; *Doherty* v. *McAlpine*, Same Term; *Dougherty* v. *Hitchcock*, 35 Cal. 512.)

The second branch of our first point is fully sustained by the last cited case. See, also, *Emery* v. *Bradford*, (29 Cal. 86); on the points that the work was done and the mischief past remedy when the time for appeal came.

It follows, the contract is void on account of excess of power in making it, and hence all subsequent proceedings are void.

The Board never *attempted* to authorize the variation in the contract, and if it did so attempt, it was illegal, for it cannot delegate discretionary power, nor depart from the very *mark* prescribed in the resolution of intention. (See cases above cited; also *Thompson* v. *Schemerhorn*, 2 Seld. 92.)

*Second*—The assessment was made to "unknown owners." Satterlee and Reese at least were well known. The lots had for two years previous been assessed to Reese on the City and County Assessor's books. For this reason the assessment was void.

The Statute (1862, p. 397,) contemplates that when the name of the owner—or claimant, as in this case—of a lot is known to the Superintendent, or may by the exercise of at least slight diligence be ascertained, he shall put such name down " opposite the lot assessed " etc.

It was never intended to leave it to the Superintendent *alone*, to determine the question whether the name was known to him or not.

This Court has held that an assessment, to be valid, must be made to the owner if known. *(Blatner* v. *Davis*, 32 Cal. 328.)

*Third*—The map or profile of the street was not signed by Brooks, one of the Board of Civil Engineers, as required by the statute, and hence there was no official grade established for the street.

The common law rule is that where several are to do an act under authority, a majority may decide, etc., unless the statute otherwise directs. *(Dougherty* v. *Hope,* 3 Denio, 253, and cases cited.)

*Fourth*—The resolution of intention to grade was not published according to law, and the proceedings are null and void for that reason. On this point we refer to our argument in *Himmelman* v. *Byrne & Broide*, in this Court.

The statutes (1863, p. 525,) provides that the resolution shall be published for " *a period of ten days,*" etc., but it does not say when the publication shall commence. This is left to the Board of Supervisors to determine, and this they do in the resolution; " this resolution is to be published for a period of ten days, (Sundays excepted), *from and after its passage,*" etc. Persons objecting, are to do so, " within ten days after the *first publication* thereof," etc.

The first publication should be at least on the next day after its passage; if not, then it may be commenced any

time *after*, and no point of time for commencing will be fixed upon. The words "from and after," must mean that the ten days are to begin to run on the next day succeeding to the passage of the resolution.

Objectors have ten days to file objections "after the *first publication.*" The object is to give notice. By our construction notice is given; by our opponent's construction no notice is given, for how are the property holders to know when the publication began? The resolution being dated, the published advertisement, should, on its face, show when it began, and this it does *only* when it begins on the *next day* after the passage of the resolution.

But if it is said, that the call of the resolution is really for a publication of *eleven* days, we reply: the resolution called for a publication of *ten* days, Sundays included in the period, but excepted from the publishing days, that is, the statutory publication. (*Haskell* v. *Bartlett,* 34 C. R. 281.)

If however the *eleven* days be taken as intended, then the the resolution ordered a publication different from that provided for by law; *i. e. ten* days. This would invalidate the resolution, and create a charge against the property owner not authorized by law. (Blackwell on Tax Titles 194, 261, and 68–82.)

The publication was not made pursnant to the order. The clerk has no inherent power to advertise. (*Menser* v. *Risdon,* 36 Cal. 239; Blackwell on Tax Titles, 51.)

It makes no difference if the order is construed for *ten* or *eleven* days publication; it is invalid because not made either ten or eleven days "from and after its passage."

*Fifth*—The *prima facie* character of the evidence furnished by the warrant, assessment and diagram, is destroyed by the proofs and admissions, that the assessment of the Superintendent of Streets was made by him upon data or assumed facts of which he had no personal knowledge.

The statute contemplates that the Superintendent shall make the assessment; it was never intended by the Act that he might delegate his powers. *Delegatus non delegare protest.*

The warrant is but a power or authority to the contractor to collect the amounts specified on the assessment and the diagram which forms part of the assessment.

No assessment was in truth made by the Superintendent, and it and the diagram and warrant were illegal and void. (See Blackwell Ed. of 1864, p. 39; *Dougherty* v. *Hitchcock*, 35 Cal. 511.) It is held in *Himmelmann* v. *Janson*, (34 Cal.); *Taylor* v. *Doner*, (31 Id. 480); that if there was no contract, there could be no assessment; we have shown the contract to be unauthorized and void. This defect being fatal, there was no obligation on the defendants to appeal to the Board, for its action would not reach the disease.

*Sixth*—The Act under which the work was done, and all the steps taken thereunder are unconstitutional, being repugnant to the last clause of Sec. 8, Article 1, of the Constitution.

We do not claim the Act in *all* its parts as open as these parts prescribing the rule of assessment. Subdivision 1, of Sec. 8, gives an insight into the general character of the rule adopted. It provides that the expense for the work shall be assessed upon lots and lands fronting thereon, " except as hereinafter specially provided, each lot or portion of lot, being separately assessed, *in proportion to its frontage, at a rate per front foot sufficient to cover the total expense of the work*." No consideration of benefit or injury is here permitted to be considered. The Act is unconstitutional also because it provides for assessments to be made by an officer other than the one who is designated by the Constitution for that purpose.

The principle of the assessment is unconstitutional. The Legislative power sought to be exercised, is that of *taxation* not of *eminent domain*. (*Emery* v. *S. F. Gas Co.* 28 Cal. 346; *People* v. *Mayor of Brooklyn*, 4 Comst., 420.)

The question in this aspect has not been "squarely presented" *to*, or decided *by*, this Court. No cases, that we find, uphold the practice as constitutional of assessing the cost of grading, in proportion to the number of front feet

of such lots respectively; and we do not overlook. (*Emery* v. *S. F. Gas Co.* (*supra*); *Emery* v. *Bradford*, 29 Cal. 75; nor *Taylor* v. *Palmer*, 31 Id. 241.)

In the cases decided formerly in this Court affecting this point, the assessments were, or were supposed to be, graduated to some extent by benefits received and damages sustained; in this case such is not the fact, as appears. No case has in terms held that a statute could be upheld which disregarded this principle of benefit.

In *Creighton* v. *Mansou*, (27 Cal. 614,) which arose under the Act of 1862, it was held that the "municipal governments act under the legislative authority conferred, which is a *portion of the sovereignty* delegated for the purposes of municipal government." The municipal government, "is subject to all the constitutional restraints and limitations imposed on the Legislature." It has "no higher power than the Legislature," and can do no act "that the Legislature might not do if it should act directly in the matter." In that case, it is also held that "the assessment is not a tax."

It is there held also, that the exercise of the right of assessment, "cannot well be supported," upon the sovereign power of *eminent domain*. Again, as to the principle of benefits, it is held "that the assessment must not exceed the value of the benefit conferred by the improvement." See the cases cited on this point, in that case.

The Court in that case then condemns as unconstitutional, the practice of levying assessments, irrespective of considerations of *benefit* or *injury*.

In *Hart* v. *Gavan*, (12 Cal. 476), the point was not made. Id *Burnett* v. *City of Sacramento*, (12 Cal. 76,) the case proceeds manifestly on the assumption that the *burdens* had been imposed on the recipient of the *benefits*.

In *Emery* v. *S. F. Gas Co.*, (*supra*,) we think the Court was led into error, and that the authorities cited do not sustain the judgment of the Court; but the case settles the doctrine in this State, that the power in question is to be deduced from the constitutional power of *taxation*, and not of *eminent domain*. A critical analysis of the cases cited by

the Court, lead to the conclusion that the analogy supposed to exist between them, and the case (*Emery* v. *S. F. Gas Co.*) decided does not exist; and this we say with the highest respect and admiration for the Justice delivering the opinion, and the members of the Bench concurring.

Counsel then referred to the following authorities cited: in the case of *Emery* v. *The San Francisco Gas Co.*, (28 Cal. 346); and commented on them at length, in support of his positions on this point; *Scoville* v. *City of Cleaveland*, (1 Ohio St. Rep. 134); *Hill* v. *Heyden*, (5 Ohio St. Rep. 243); *Reeves* v. *The Treasurer of Wood County*, (8 Ohio St. Rep. 333); *Northern Indiana Rail Road Co.* v. *Connelly*, (10 Ohio St. Rep. 159; *Maloy* v. *City of Manetta*, (11 Ohio 636); *Egyptian Levee Co.* v. *Hardin*, (27 Missouri, 495); *City of St. Joseph* v. *Anthony*, (30 Missouri, 537); *Inhabitants of Palmyra* v. *Martin*, (25 Missouri, 593); *Wecks* v. *City of Milwaukie*, (10 Wis. 242); *Woodbridge* v. *The City of Detroit*, (8 Mich. 274); *Municipality No. 2* v. *White*, (9 Louisiana Rep. 446.)

Finally, we conclude that the general drift of the opinion in *Emery* v. *S. F. Gas Company*, (which, being the leading case, has been so largely dwelt upon,) carries the power of the Legislature no farther than to authorize assessments, which shall in some way, and to some extent, *be apportioned according to benefits received,* and it does not concede to the Legislature the power to authorize an assessment, which shall entirely destroy the value of one man's land, while, at the same time, it greatly enhances the value of the land of adjoining proprietor.

*C. H. Parker*, for Respondent.

*First*—The point concerning the assessment to unknown owners is not well taken.    See *Himmelmann* v. *Steiner*, No. 1525.    After rehearing granted July Term, 1868.

*Second*—The point is not well taken that the map or profile was not signed by Brooks.    Section *three* of the Act referred to by appellant, provides: that if the maps and pro-

files are approved by the Board of Supervisors they shall stand as the legal and valid official plan, etc.

It is not until after they have become "legal and valid" that they are to be certified to by the Engineers, as required by section six. The omission to certify cannot have any retroactive effect to nullify the approval of the Supervisors. The certificate is required for *identity*, not to establish their validity. (*Himmelman* v. *Janson*, No. 1404, Oct. T. 1868.)

*Third*—The point that the resolution of intention was not published according to law is without substantial foundation. Publication was required for ten days, but not ten days from any particular time. (*Taylor* v. *Palmer*, 31 Cal. 244.)

*Fourth*—That the *prima facie* character of the evidence of plaintiff was destroyed by the admission, etc., being the fifth point made by appellant, a complete answer will be found in the statutes. A Deputy-Superintendent can do everything that the Superintendent can do, except that of accepting work. The deputy may make the assessment.

And the same may be said of the Surveyor, and his deputies. (Hittel's Digest, paragraphs 7040, 7042.)

It follows, that whatever they do, severally or jointly, is legal, so far as the questions of *power* are concerned.

No error, it is to be observed, is claimed to have been made by the Deputies.

The issues present nothing material, involving the good faith of the Superintendent or Surveyor.

*Fifth*—A complete answer to all these objections, is found in cases already adjudicated in this Court.

The irregularity, if any existed, could have been corrected before the Board.

The objection to the grade one foot below the official line, comes too late on the *trial* of the case; appeal to the Board was the true remedy. Any interested person, may appeal to the Board, who feels aggrieved by any act of the Superintendent. (See Sec. 12 of the Act.)

The whole subject resolves itself into one of power, on the part of the Supervisors, to compel the Superintendent and the contractors to comply with the award.

The Supervisors order the work to be done; they advertise for bids; the contractors offer to do the work at certain prices; the city accepts the offer, and manifests such acceptance by an award. Thus the contract is complete. All acts after the order are ministerial. (*Dougherty* v. *Foley*, 32 Cal. 405; 16 Cal. 279, 280.)

In *Dougherty* v. *Hitchcock*, the point claimed, as decided, is, that "when the time for the appeal came, the work was done and the mischief past remedy."

It is common for the Board to set aside assessments, acceptances, etc., and to require work to be done according to the contract and award. All the acts of the Superintendent are under complete control of the Board; there is no limitation upon his acts. All the objections to regularity of proceeding, and to non-conformance with the law, could have been raised before the Board, and all have been adjusted. As to the contract, that was but a ministerial act on the part of the Superintendent, of which the Board had complete control, for the bid, acceptance and award, completed the contract, before anything was required of the Superintendent. (16 Cal. 279, 280.)

The macadamizing of the street was being advertised for, which fact the Superintendent of Streets knew, and therefore he made the contract as he did, for a grade one foot below the official grade. This was for the interest of the property owners, and to save putting *on* one foot, to be immediately taken *off* for macadamizing purposes, thus saving a double expense.

Counsel for respondent drafted the law of 1862, and kept in view the principles laid down in 33 Barb. 150. It is expressly provided that the Board acquires jurisdiction on publication of the notice of intention, and after that notice there is no period when objection to any proceeding, during the whole course of the proceedings, may not be made on appeal to the Board of Supervisors.

All persons, it is settled, are charged with a knowledge of the proceedings of the Board, who are interested therein.

These principles have been universally applied by the

Courts in this State. If the "contract has not been performed," the remedy is by appeal to the Board. of Supervisors. (*Cochrane* v. *Collins*, 29 Cal. 129; *Emery* v. *Bradford*, 29 Id. 75.)

So, where the assessment is made to "one of several owners." (*Taylor* v. *Palmer*, 31 Id. 241.) So, where the assessment is made against a "person not living," and is therefore *void*. (*Smith* v. *Cofran*, 34 Id. 314.) So, when the Superintendent "improperly enlarges the time" for the performance of the contract. (*Conlin* v. *Seaman*, 22 Id. 546.) So, when the Mayor "countersigns a warrant when he is disqualified to act." (*Beaudry* v. *Valdez*, 32 Id. 277; and in the case of *Nolan* v. *Reese*, Id. 487.)

The Court says (all the judges concurring) that the right of the plaintiff cannot be "*subjected to the test*" of common-law principles. And assuming that the facts stated in that case constituted a *positive fraud*, still they held that the remedy was by appeal, and the methods pointed out for reviewing the decisions of the Board and the acts of the Superintendent, "*excluded all others by positive provisions.*"

At. common law, where a right exists, and a new remedy is given by statute, the latter is cumulative, and either remedy may be pursued, but where right and remedy are both given by statute, the remedy provided by statute *alone* can be pursued. (2 Cal. 243; 7 Id. 129; 16 Id. 524; 5 Id. 210; 9 Id. 267; 1 Clutty Plead, (10 Am. Ed. 143.) See specially *Dougherty* v. *Foley*, (32 Cal. 405); that when the work is ordered it amounts to a judgment, and all subsequent acts are ministerial merely.

I invite attention to the cases to be found in the 12 Abb. P. Rep., at pages 118, 121, 124 and 127, and in 51 Barb. Rep. 82, wherein the Courts manifest a determination to sustain proceedings of this character when work has been faithfully performed under the guidance of the public authorities. And our Legislature at its last session manifested the same liberal policy, and has prohibited any defence to a street assessment, except upon these grounds: *firstly*, want of jurisdiction; *secondly*, payment; *thirdly*, fraud in any of

the proceedings; thus wisely cutting off defenses such as are raised in this case, which if sustained, constitute a moral fraud on the contractor.

WALLACE, J., delivered the opinion of the Court, TEMPLE, J., and CROCKETT, J., specially concurring. RHODES, C. J., dissenting. SPRAGUE, J., expressed no opinion.

The plaintiff recovered upon an assessment for grading a portion of Van Ness Avenue, in San Francisco, under the Consolidation Act, as amended in 1862 and 1863. This appeal is taken from judgment and order denying a new trial.

The first point presented by the appellant for our consideration assails the constitutionality of the statute under which the proceedings were had. It is argued that the leading principle of the Act (vicious in itself as it is said) which directs that each lot shall be assessed in proportion to its frontage, and at a rate per foot front upon the street to be graded, is at war with both the letter and spirit of the Constitution. In support of this view the last clause of Section 8, Article I, of that instrument is cited: "Nor shall property be taken for public use without just compensation." It is, however, scarcely necessary to remark that this clause merely fixes a limitation upon the otherwise unrestrained power of eminent domain inherent in the State Government, and that neither the power itself nor its limitation is involved in the proceeding now in question.

It is next urged that the statute is unconstitutional, because, as it is said, it imposes a tax to be levied, not upon an *ad valorem* principle, and in aid of the point Section 13, Article II, of the Constitution is appealed to: "Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law; but assessors and collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property taxed for State, county or town purposes is situated." The aim really had in view by the framers of the Constitution in adopting this clause, and the jealousies

it was designed to allay, are yet fresh in the recollection of most of us, and these were in no wise connected with the mere local proceedings of a municipality. The conclusive answer, however, to this last objection is, that the burden in question here is an assessment merely; and though its imposition is an exercise of the taxing power, it is not in itself that "taxation" mentioned in the Constitution and there required to be laid upon property "in proportion to its value." The distinction in this respect between such an "assessment" upon the one hand, and such "taxation" upon the other, may be said to have already become firmly fixed in the constitutional jurisprudence of the State, and we think it too late to question its soundness now, even if we really entertained a doubt of its correctness in the abstract, which we do not.

It was directly asserted by this Court more than ten years ago, in the case of *Burnett* v. *The City of Sacramento*, (12 Cal. 76), in which case Mr. Justice Field, with the concurrence of both his associates, speaking with reference to the levy of an assessment upon property to pay for grading the adjacent street, said: "The thirteenth section of Article XI of the Constitution does not cover the case. * * * For the expenses of such improvements it is competent for the Legislature to provide, either by general taxation upon the property of all the inhabitants of the county or town in which they are made, or upon property adjacent thereto and specially benefitted thereby."

This distinction, as applied to the present Consolidation Act, was pointed out and maintained with marked ability, and upon the most elaborate research, in the case of *Emery* v. *The San Francisco Gas Co.* (28 Cal. 345); it was again expressly recognized in the subsequent cases of *Emery* v. *Bradford*, (29 Cal. 82), and *Walsh* v. *Matthews*, (Id. 123). At a still later period, in *Taylor* v. *Palmer*, (31 Cal. 240), the question again came under review in this Court, and this distinction was pointed out and maintained with great clearness and force. Since the decision in *Taylor* v. *Palmer*, *(supra)* until now, the constitutionality of the Act

has not been seriously·questioned, so far as we know, but has been assumed as the basis of decision in the numerous street assessment cases which have in the meantime been determined in the Courts. We think, therefore, that the constitutional validity of the Act (at least to the extent to which it was maintained by the majority of the Court in *Taylor* v. *Palmèr*,) must be considered as definitively established here.

The validity of the proceedings resulting in the assessment is, however, questioned upon other grounds.

It is said that there was no official grade already determined for Van Ness Avenue, when the Board resolved to grade it. But it'is evident that the appellant is mistaken in this proposition. It did not, as he supposes, require the signature of the persons composing the Board of Engineers to be attached to the maps and profiles, prepared under the statute (Acts 1863–4. p. 460,) in order that these maps and profiles should become valid. Section 3 provides that the approval of the Board of Supervisors, shall impart validity to them. Besides, if the signatures of the engineers were ever material for that purpose, they clearly ceased to be so, upon the passage of the Act to ratify and confirm certain orinances, etc, (Acts 1865, p. 166.)

It is next objected, that the resolution which was passed by the Board, expressing their intention to grade Van Ness Avenue, was not "published according to law." A more accurate statement of the position of the appellant on this point would be, that it was not published according to the order of the Board. It will be seen by reference to the statute, that the publication is required to be made for "a period of ten days." It appears that the Board in this instance, made an order that the resolution be published, for a period of ten days, from and after Monday, the 29th day of July, 1867. It is not denied that publication for "a period of ten days," was had before the Board proceeded further; but the point is, that the notice was not published for the particular period of ten days defined in the order—the publication not having commenced until July 31, 1867.

It will be admitted, we think, that if there be a conflict between the statute and the order, the latter must give way. The jurisdiction of the Board of Supervisors in the premises is derived wholly from the statute, and is vested in them, not absolutely or generally, but only in special cases, and under certain conditions, prescribed by the statute itself. There must be notice of the intention of the Board to order certain work to be done: the work itself must be such as is authorized by Section 3 of the Act; the notice must take on the form of a resolution, and no other kind of notice will be sufficient; it must describe the work to be done; it must be signed by the Clerk of the Board, and it must be published for a period of ten days. It is obvious, that if there be a substantial failure or omission, in any one of these several prerequisites, the jurisdiction of the Board to order the particular work will not have attached. And it is equally clear, that upon a concurrence of all these several conditions, the grant of jurisdiction to the Board becomes absolute to order the proposed work to be done

If the Board have authority, by its own order, to alter at its pleasure, in the slightest particular, any one of these prescribed prerequisites to the vesting of its own jurisdiction, we have not discovered whence such authority is derived. As we read the statute, the mere passage of the resolution here, had, for the time being, exhausted the whole power of the Board in the premises, and it could at that time proceed no further in that direction. Especially it could not assume to itself to make an order by which a new rule of publication should be put in force, and essentially differing from that one which the statute had theretofore provided. For instance; it could not require by its order, that the publication should be had for the period of eleven days, instead of the ten provided for by the statute. If it should enter an order to that effect, and the publication should proceed, it is clear that the jurisdiction, so far as it depended on publication, would attach at the expiration of ten days' publication, and without reference to the publication on the eleventh day. Otherwise the Board must be said to have

derived its authority, from the observance of the terms of its own order, and not from a compliance with the directions of the statute—a proposition for which no one, of course, would contend.

If it should be asked why the Board could not be permitted to require the publication to be continued for the period of eleven days, a sufficient answer would be found in the fact that the statute had already dispensed with the necessity of eleven, when it fixed upon ten days as the proper period. As we have seen, its language is: "Published for a period of ten days," etc. A period of ten days means any such period after the passage of the resolution and signature by the Clerk. The substitution of the adjective pronoun for the indefinite article used in the statute, would not make its import plainer in this respect. The exclusion, then, of that period of ten days, which commenced on July 31st, as a proper period of publication, has no countenance in the statute itself, which neither excludes it or authorizes the Board to do so. Such power, if it exist, renders the Board superior to the Act which created it, and set limit of its authority. It would be, in fact, a power in the Board to repeal the statute itself in this respect; for there is no practical difference between an order which should repeal the words of the statute, and one which would alter their essential meaning.

Nor do we see that it devolves upon the Board to undertake the direction of the publication of their resolution of intention in any case. That is provided for by the same statute which has empowered the Board to pass the resolution itself, and which then required both signature of the Clerk, and publication for a fixed period. Undoubtedly if the Board should think proper upon the passage of such a resolution to make an order that the Clerk should sign it, and that it should be published for the period of ten days, or simply published, which, as we have seen, means publication for ten days—in other words, if the Board choose to reenact the statute—no harm would result; but even then the required acts when done, would be referred for their validity

to the statute, and not to the order of the Board. In so far as they would appear to have pursued the statute in these respects they would be held valid, otherwise not.

It results from these views, that the Board, to use the language of the statute, "acquired jurisdiction," to order the work in question to be done.

It is next objected, that the assessment was made by the Superintendent of Streets to owners unknown—when, in fact, the proof showed that the officer *did know* who was the owner, etc.

The statute provides (Section 9), that the Superintendent shall make an assessment which shall show the amount to be paid, etc., "the owner of each lot or portion of a lot, (if known to the Superintendent), if unknown, the word 'unknown' shall be written opposite the number of the lot and the amount assessed thereon," etc. The word "unknown" was in this instance written opposite the number of the lot of appellant upon the assessment.

We lately had occasion in the case of *Hewes* v. *Reis* to define the import of the word "unknown," when thus endorsed by the Superintendent upon the assessment, and we then held that it amounted to an official certificate by the proper officer, that in point of fact the owner of the particular lot designated, was unknown to him. We think that when such a certificate has been given by the officer, it is conclusive of the fact so certified, and cannot be collaterally called in question in an action brought upon the assessment upon which it is officially entered. A party who relies for recovery upon such an assessment, is not to be called upon to embark in an inquiry as to the probabilities of the actual state of knowledge possessed by the officer at the time that the certificate was made but may rely upon it as conclusive, that in point of fact such ownership was unknown to the officer. This we understand to be the general rule as to the effect of such certificates when collaterally assailed, and if such certificate be false in fact and damage has ensued, the party injured must seek his redress by an action against the officer, directly alleging its untruth.

The next objection is that the assessment is void because, while the order of the Board directed the street here to be graded—which of course means to the official grade—the specification actually annexed to the contract provided that the street should be "graded to the official height and line, except the roadway, which is to be graded twelve inches below the official grade—and when completed is to have a crown to the center of eighteen inches from the bottom of the gutter-ways."

The conclusive answer to this objection, however, is that the appellant might have appealed to the Board of Supervisors, and it would have been their duty, if the objection had been well taken (a point upon which it is not necessary for us to express an opinion), to have directed the Superintendent to proceed to make a contract in conformity with the order of the Board.

The statute (Sec. 12) provides for an appeal to the Board by any party "feeling aggrieved by any of the acts or determinations aforesaid of the said Superintendent;" etc. Now, one of the acts * * aforesaid, of the said Superintendent (as provided by Section 7), is to enter into all written contracts authorized by the Act; and the statute provides that, upon such appeal, the decision of the Board shall be final " as to all errors and irregularities which said Board could have remedied and avoided." The Board having obtained jurisdiction regularly in the first instance to order the work to be done, retains that jurisdiction until it is finally completed in the manner pointed out by law. This principle was applied in this Court, in the case of *Dougherty* v. *Foley* (32 Cal. 402), where the Board having regularly acquired jurisdiction to order certain work done, a contract was awarded to a person who subsequently failed to comply with it on his part, and it was held that the Board, having acquired jurisdiction in the first place to order the work done, and having made the order, "the subsequent steps were ministerial in their character," and that consequently the Board might re-let the contract without commencing *de novo.*

So, too, in *Emery* v. *Bradford*, (29 Cal. 75) an appeal was held to lay to the Board, from an erroneous determination made by the Superintendent, to the effect that the contractor had fulfilled his contract. Accordingly the owner of the lot, in a suit against him upon the assessment, was not permitted to prove "facts showing that the work was not done in accordance with the said ordinance," because he might have had that question determined by the Board. If, on such an appeal, the Board might have relieved a party from the assessment, on the ground that the work did not fulfill the contract, might it not relieve also in a case where the contract, in accordance with which the work was done, did not itself comply with the order of the Board under which it purported to have been made ? In either case, the real and ultimate point of inquiry is, as to whether or not the work had been, or was about to be, in fact, done, which the Board determined was necessary, and had accordingly ordered to be done.

So, in the case of *Nolan* v. *Reese*, (32 Cal. 486), it was held that neither a fraud which affected "the award of the work," nor one which affected the "legality of the assessment," could be shown in defence of an action against the lot-owner in the assessment, because these matters might have been decided by the Board on appeal.

We think that while the statute intended to leave open for judicial inquiry all questions which can be said to be of a jurisdictional character, its purpose was to submit all other questions to the decision of the Board itself. It is well enough for the appellant to come here to say that the Board had no jurisdiction to order the work done at all, but when he comes only to say that it was not well or sufficiently done, the Superintendent in the first instance, and the Board on the last resort, would seem to have been considered by the statute, and wisely considered, we think, as most likely to correctly determine that matter. It may be that in the understanding of the Board and others who deal with these matters, a street graded in accordance with the specifications here is up to the official grade; that the "official grade" is

defined, by usage and practice uniformly prevailing, to mean a crown in the center of the roadway and sloping to the gutterways; that those who enacted the law of 1862 so understood it; and it might be absurd to say that it could only be satisfied by a level surface extending from curb to curb, and it may be that an appeal, if taken to the Board upon this point, would have been, therefor, ineffectual.

However that may be, the jurisdiction of the Board over such questions is clear.

The judgment and order denying a new trial are affirmed.

RHODES, C. J., I dissent from the judgment and from the opinion of Mr. Justice WALLACE, except on the constitutional question.

By TEMPLE, J., concurring:

In this case I agree with Mr. Justice WALLACE in his conclusions, but in some respects I do not agree with the process of reasoning adopted by him, nor with his statement of the rules of construction by which the statute is to be interpreted.

The first question which I propose to notice, is that in reference to the publication of the resolution of intention. The statute says the Board may order the work to be done, after notice of their intention to do so (signed by the Clerk), has been published for ten days. As I understand this statute, it requires notice to be given by the Board itself. At that time there were no parties to the proceeding, and consequently the notice can be given by no one save the Board. The power to grade streets is in them, but the very first step in the exercise of the power, is to give the notice, or rather this is a condition precedent to their exercising the power at all. The requirement that the resolution shall be signed by the Clerk is addressed to the Board, and not to the Clerk. He is the mere servant of the Board, and has no power except as their servant. The provision only directs the mode of attestation by the Board. The manner of giving notice is by publishing the resolution; and it seems to me it must inevitably follow that the publication must be

made by the Board.   Otherwise the duty of causing the publication is not imposed upon any one, for the Clerk certainly is not required to do it independently of their directions. The publication is official.   The work is done primarily for the city and county.   No one is authorized to contract for the city and county save the Board of Supervisors, and I think the publication required by the statute can only be made by their authority.

In this case the Board did direct the publication of the resolution, but it is contended, that as they directed it to be published for ten days from and after its passage, and it was not published until the second day after the day upon which it was passed, it was not published in accordance with the directions of the Board, and the publication was, therefore ineffectual to vest the Board with the power to order the work to be done.

There is no doubt that a statute which provides that it shall take effect from and after its passage, will be in full operation on the following day.   It is also well settled, that when a contract fixes the commencement of a period, within which certain acts are to be done, as commencing from the date or the day of the date, the time commences to run as early as the following day; but in these cases the expressions are used for the purpose of fixing a definite time when a law shall begin to be operative, or a limit within which certain things are to be done.   The time is of the essence of the thing.   Where, however, in the execution of a statutory power, time is mentioned, unless it is a limitation upon the power, the power may be exercised after that time; in other words, the provision as to time is directory.   In the present case the direction is from the Board to its servant.   The matter is between them so far as the particular language, in which their instructions are given, is concerned.

The essential thing to the public was that the resolution be published officially.   The language was probably not selected with any great care, and I think should receive a liberal construction, with a view to give effect to the intention

of the Board.    Under the circumstances of this case, I have no doubt that by the words "from and after its passage," the Board simply intended to direct the Clerk to proceed to publish immediately.    Had they used this language, there is no question that we could have construed the meaning to be as soon as practicable, and I think it would be unfair to the Board and to all parties, to give the language used a móre rigid construction.    It would manifestly be giving it a more literal meaning than was intended, and would be on a par with the old case of punishing a surgeon for bleeding a patient under a law which condemned blood-letting in the streets. I therefore think the publication sufficient.    (See Butler's Case, 3 Rep. 34.)

But it is said, if the Board acquired jurisdiction to order the work to be done, by the publication of the resolution, still the contract made by the Superintendent of Streets is void, because it is not for the work mentioned in the resolution.    The resolution, in legal effect, is said to call for grading the street to the official grade.    All the preliminary proceedings in the Board are of like import; but the Superintendent entered into a contract "to grade to the official height and line, except the roadway, which was to be graded one foot below the official grade."    The answer to this objection, as I understand it, is two-fold.    First, it is said the contract is substantially in accordance with the resolution of intention—that is, it is graded to the official grade, allowing for pavement, macadamizing or planking—one of of which must be done before the street is fit for use. There is no evidence that the street was to be finished in either of these modes.    There is nothing in the proceedings of the Board indicating such an intention.    If the question be one of definition, it seems to me, there should have been some evidence that the language, in the connection in which it was used, has this unusual signification.    The phrase "official grade," has a well understood meaning, and there is nothing in the case to indicate that it has any different signification when used with reference to contracts for grading streets.

The other answer to the objection is that the remedy of the defendants was by an appeal to the Board of Supervisors from the assessment. That the Board, if the work was not done in accordance with the resolution, would set aside the assessment; that they could compel the contractor to amend his contract so as to conform to the resolution of intention and his bid, and refuse to allow an assessment to provide for his payment until he had made the grade of the street conform to his contract as corrected; that this is a special remedy provided by the statute, and is exclusive of any other. I think this is a good answer to the objection, though the position is somewhat in conflict with the case of *Dougherty* v. *Hitchcock*, (35 Cal. 512). In that case it is said in reference to an objection somewhat similar, that when the appeal came the work was done, and the mischief past remedy. It is, however, impliedly admitted that if the mischief could have been remedied, the answer to the objection would have been good.

It is true, as said in *Smith* v. *Davis*, (30 Cal. 536), in these proceedings "the various Acts prescribed by the Legislature must, in all essential particulars, be strictly performed." It is the exercise of a naked statutory power, in which the prescribed mode is a limitation upon the power. It is a proceeding to divest individuals of their estates, and the statute must be strictly construed in favor of individual rights; and yet the statutes confer powers which are to be used for the public good, and the officers charged with their execution are necessarily intrusted with a large discretion. Such statutes are of a mixed character, partly penal and partly remedial, and should be liberally construed, so far as it is necessary to render their execution practicable. It is an old rule that the language in which the legislator has expressed his will is not to be so used as to defeat that will. Even statutes wholly penal are not to be so strictly construed as to defeat the obvious intent of the Legislature.

The desired end in the construction of these statutes, as applied to this class of cases, is that individuals should be deprived of no safeguards which the Legislature has pro-

vided for their protection, and at the same time a proper exercise of the powers granted, shall not be unnecessarily obstructed, and that the contractor, who has in good faith performed labor, should have certain and speedy means of collecting his money. The interests of the property-holders, as well as of the public, require the streets to be graded, and it is for the interest of all, so the rights of none are jeopardized, that the contractor should have the most certain means of prompt collection. Litigation in the collection necessitates higher prices, and these again provoke to litigation, and so the canker spreads and deepens.

I do not think, however, that there is any magic in the fact, that after notice of intention, the Board acquire "jurisdiction," which will excuse to any extent, a compliance with the requirements of the statute. The word jurisdiction of course means power, for there is nothing of a judicial nature in that portion of the proceedings, which relates to ordering the work and letting the contract.

There is nothing peculiar in this statute in this respect. It is generally, if not always the case in statutes conferring the power to divest vested rights, that notice is given to the parties, whose rights are affected, as a condition precedent to the exercise of the power. The statutes in regard to laying out or changing highways provide for notice, which must be given before the Board has jurisdiction to act; but I never heard the proposition advanced that this dispensed with a full compliance with the statute, in the exercise of the power, after the jurisdiction had been acquired. The same is true of all proceedings for the condemnation of lands, and even in the assessment and collection of the general taxes, in which case the assessment roll is, upon notice, laid open for the inspection of the tax-payers; and an appeal provided from the action of the assessor to the Board of Equalization.

It is not to be supposed that the Legislature has provided, with the greatest minuteness, the mode which the Board is to adopt in these proceedings, and then excused them from pursuing the mode, except at their option. I therefore think,

notwithstanding the resolution of intention has been reg-
ularly published and the Board has acquired jurisdiction to
act, they must still exercise their power in the mode pre-
scribed by law—as much so, as in laying out a public road
after due notice. The effect of the right to appear before
the Board and object to the proceedings, as a special rem-
edy provided for the tax-payer, was discussed in the recent
case of *Hewes* v. *Reis*, and to the views there expressed after
a thorough examination, I still adhere. The right to pro-
test against a threatened injury is not a remedy for it.

The contract is really between the Board of Supervisors,
as the agents of the city and county, and the contractor.
The work for which bids are made, and which the contractor
agrees to do, is that described in the resolution of intention.
The agreement is complete when the bid is accepted, and it
is the contract made by the Board, which the Superintend-
ent is required to reduce to writing. As said in *Emery* v.
*Bradford*, the tax-payer is not a party to the contract; and
it is reasonable and proper that the Board of Supervisors,
which represents the city and county, should determine
whether the work has been done in accordance with the
contract, and that their decision should be final. The tax-
payer, however, though not of a party to the contract, is al-
lowed to object that the work has not been done in accordance
with the contract and to appeal from the determination of
the Superintendent accepting it. I have no doubt but that
this right is exclusive of any other remedy as to all matters
which can be revised and corrected on such an appeal.

In this case the written contract did not correctly de-
scribe the work which the Board had ordered to be done,
and which the contractor had agreed with the Board to do.
The error was in the written memorandum made by the
Superintendent. The statute providing an appeal is broad
enough to include an appeal from the determination of the
Superintendent, and I see no reason why a complete rem-
edy is not afforded by it. The Board, as already stated,
could order the contract to be reformed and refuse to allow
an assessment until the work was made to conform to it.

The contractor could not complain of this for he ought to have executed no contract not in accordance with the agreement made between himself and the Board, and he contracted with a view of the right to appeal from the acts of the Superintendent, and of the right of the Board to make his contract conform to his real agreement, and he is not injured by being compelled to do the work as he agreed to do it. By failing to pursue this remedy, I think the defendant lost his right to object, that the grading has not been done as ordered by the Board.

On the other questions discussed, I concur with Mr. Justice WALLACE. I also concur in the judgment.

By CROCKETT, J., concurring:

I concur with Justices WALLACE and TEMPLE in the opinion that the order denying the motion for a new trial ought to be affirmed, and I also concur with Justice TEMPLE on the first point discussed in the opinion. I think the publication of the notice of intention was sufficient, for the reasons stated by him. The notice being sufficient there appears to have been no irregularity in the proceeding, down to and including the award of the contract by the Board of Supervisors. The work ordered to be done was to grade the street, which was equivalent to an order to grade it to the official grade, as we have several times decided. The contractor put in his bid to do the work, and the contract was awarded to him at a stipulated price per cubic yard. It then became the duty of the Superintendent of Streets to enter into a written contract with the contractor binding the latter to the performance of the work ordered by the Board, at the agreed prices and within the stipulated time. In performing this duty, the Superintendent of Streets was, *pro hac vice*, the agent of the Board with authority to execute the contract which had been awarded, and no other or different contract. He occupied towards the Board in this respect the relation of a special agent, having a limited authority to execute the contract for the particular work specified in the order of the Board, which was to grade the street to the official grade. But it appears that, in the contract which

was entered into, the contractor was required and undertook not only to grade the street to the official grade, but also to grade the roadway to the depth of one foot below the official grade; and the defendants claim that; for this reason, the contract was absolutely void, as wholly unauthorized and in excess of the power of the Superintendent of Streets, who had no lawful authority to enter into a contract different from that ordered by the Board. But, in my opinion, the contract was not wholly void, even though it be conceded that in requiring the roadway to be excavated to the depth of one foot below the official grade, he exceeded *pro tanto,* the authority conferred upon him. It does not necessarily result, that the act of a special agent, acting under a limited authority, is wholly void, because in some particulars he has exceeded his authority. If he has done what he was authorized to do, and something more, the act may be either wholly void or good so far as it was authorized, and void only for the excess, according to the nature of the act performed. If the act in its nature, be indivisible, the execution of the power will be wholly bad if the agent exceed his authority. If, for example, an agent be authorized to purchase or sell a particular horse, he could not, under this authority, bind his principal for the purchase or sale of one half of the horse. On the other hand, if the act performed be divisible in its nature, so that the part which he was authorized to perform, can be separated from the rest, without injury to the principal, the latter will be bound by it, so far as he authorized it, and it will be void only for the excess. Thus if an agent have authority to purchase a particular farm at a specified price, and if he not only purchases that farm, at the price limited, but, in addition thereto, another farm for a further stipulated sum, the principal will be bound for the first purchase, but not for the last. In all this class of cases, the liability of the principal depends upon the fact whether the act of the agent can be so separated as to give due effect to the execution of the power without prejudice to the rights of the principal. It is obvious that the principal will not be damaged, if he derives, from the act of

his agent, all the benefit he anticipated, even though the agent attempted to bind him, in some particulars, beyond his authority.   In other words he will have no right to complain if the act which he authorized to be done was performed according to his authority, notwithstanding the agent attempted to bind him in excess of his authority. These are familiar principles and are fully discussed in Story on Agency, (Sections 166 to 171).   Applying these principles to the case at bar, and treating the Superintendent of Streets as a special agent, acting under a limited authority, it remains to be considered whether the contract which he entered into was in its nature divisible, so that it can be upheld so far as it was authorized, and should be declared void only for the excess; or whether it is of such a nature, that if void in part is void *in toto.*   The only vice in the contract is, that it required the roadway to be excavated one foot below the official grade.   All the work which the Board ordered to be done was provided for in the contract, and at the price and manner agreed upon, between the Board and the contractor.   But the written contract called for some additional work, to be paid for at the same rate, which the Board had not authorized to be done.

In Story on Contracts (Sec. 21), the rule by which to ascertain whether a contract is divisible in its nature or is to be deemed an entirety, is thus stated: "The criterion of a divisible contract is, that the extent of the consideration on either side, is indeterminate until the contract is performed. Neither party to such a contract can claim more than an equivalent for the actual consideration on his part    No specified entirety of consideration on either side constitutes a condition of the bargain, but only a certain relation and proportion between the consideration on both sides, to be ascertained on the completion of the contract."   Tested by this rule, the contract in this case is clearly divisible in its nature, and the consideration to be paid is capable of apportionment.   The work to be performed was to be paid for at a certain rate per cubic yard and it was a matter easily to be ascertained, how much excavation was required

to reduce the roadway one foot below the official grade, and how much to grade the street to the official grade. That part of the work which the Board of Supervisors authorized to be done could readily have been ascertained and the cost of it determined; and that part of the contract which was valid, be thus severed from that which was void.

If, however, the contract had related to a building which the Board had ordered to be erected under a contract awarded to the lowest bidder, who was to do the work according to the plans and specifications, for a gross sum to be paid on the completion of the building, and if the Superintendent in entering into the contract had materially varied the plan of the building, and increased the gross sum to be paid, it is evident the contract would have been wholly void because of its entirety, and because it was wholly incapable of apportionment. In the case of *Dougherty* v. *Hitchcock,* (35 Cal. 512), the work ordered to be done was the grading of a street and the crossings for the distance of several blocks, to be let out under one contract for the whole; but the Superintendent divided the work into several sections, and entered into a separate contract for the grading of each section; and this Court properly, I think, pronounced the contract void. No one of the contracts provided for all the work which the Board had ordered to be done under one contract, and the question of apportionment, and of the divisible nature of the contract could not therefore arise. Each of the contracts was void for the obvious reason that it did not include all, but only a small portion of the work which was ordered to be done under one contract. For satisfactory reasons the Board had deemed it best to let out the whole work under one contract, and the Superintendent has no authority to frustrate this purpose by cutting up the work into sections and letting it under separate contracts. But the case at bar is wholly different. All the work which was ordered to be done was included in the contract, but in addition thereto, it provides for additional work to be paid for at the same rate. The additional work, as we have seen, and its costs, may readily be ascertained by computation

and measurement, and thus separated from that portion of the work which the Board ordered to be done, and which *was* done by the contractor in strict accordance with the proposal and the contract. The contract was therefor clearly severable and capable of apportionment, and was not void *in toto*, but only for the excess. But, in embracing in the contract additional work, not ordered to be done, the Superintendent committed an irregularity which, by the express terms of the statute, could be corrected on an appeal to the Board from the assessment. On the facts being made to appear to the Board, it might have set aside so much of the contract as provided for reducing the roadway one foot below the official grade, and have set aside the assessment, and refused to order a new one until the contractor had restored the street to the official grade. In my opinion, this was the only remedy for the property owner, and the only remedy by which the irregularity could be corrected; and the defendants, having omitted to avail themselves of this mode of redress, are concluded by the assessment and other proceedings.

I concur with Justice WALLACE on the points discussed in his opinion, other than those already noticed.