L. L. McCANDLESS *v.* CITY AND COUNTY OF HONOLULU, BY A. M. BROWN, CITY AND COUNTY ATTORNEY, AND D. L. CONKLING, ITS TREASURER.

## No. 1090.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT. HON. S. B. KEMP, JUDGE.

ARGUED OCTOBER 22, 1918.                    DECIDED NOVEMBER 19, 1918.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE HEEN IN PLACE OF KEMP, J., DISQUALIFIED.

MUNICIPAL CORPORATIONS—*eminent domain.*

The exercise of the power of assessment for the improvement of an existing street is by virtue of the taxing power and not of the law of eminent domain.

SAME—*same—constitutional law.*

The right to take private property for taxes is distinguished from the eminent domain and is not repugnant to the Fifth Amendment of the Federal Constitution.

SAME—*same—same—"due process of law."*

An assessment for local improvement based upon frontage is

not in conflict with the "due process of law" clause of the Constitution.

SAME—*same—same—same.*

A party is not deprived of his property without due process of law by the enforced collection of taxes merely, because they, in individual cases, impose unequal burdens.

SAME—*frontage tax—special benefits.*

An ordinance providing that all the lots abutting upon the portion of the street to be improved shall be assessed in proportion as the frontage of each lot is to the frontage of all the lots in the district, does not contravene the law that assessments for local public improvement shall be in proportion to the benefit.

SAME—*same—protest.*

The word "owners" in section 1795 R. L. 1915, providing that owners might protest against local improvements, held not to include tenants or lessees prior to the passage of Act 239 Session Laws 1917.

SAME—*same—limitation of actions.*

The legislature has power to prescribe the time within which actions or proceedings at law or in equity to review, question the validity or enjoin the enforcement of any improvement ordinance shall be instituted.

SAME—*same—same.*

The thirty-day limitation within which actions or proceedings to review, question or enjoin the enforcement of a local improvement ordinance shall be brought commences to run from the last day of the publication of the assessment ordinance.

OPINION OF THE COURT BY EDINGS, J.

This matter comes up on appeal by the petitioner-appellant from a decree of the circuit judge sustaining respondents' demurrer to petitioner-appellant's bill for an injunction. A summarized statement of the case is as follows:

On October 5, 1917, petitioner-appellant filed his bill for an injunction in the circuit court of the first circuit of this Territory, in substance alleging that petitioner-appellant was at the times mentioned the owner in fee simple of cer-

tain premises on Beretania street, in Honolulu, which said premises have a frontage of 72.5 feet on said Beretania street, and a depth narrowing as the depth increases as will appear by reference to Lot 37 as designated on the corrected map of frontage improvement district No. 5, dated October 17, 1916, marked exhibit "B" and made a part of said petition; that on July 8, 1916, the board of supervisors of the City and County of Honolulu passed a resolution, No. 556, wherein it was decided that Beretania street, from a point near King street to Nuuanu avenue, should be improved by the initiative of the board of supervisors and the cost thereof be assessed against the owners, per front foot, as the premises abutted upon said highway, declaring Beretania street a main thoroughfare, and stating that one-third of the cost of such improvement should be borne by the City and County of Honolulu; that on the 2d day of August, 1916, the city and county engineer filed his engineer's preliminary report showing among other facts that the total frontage of land abutting on said street was 4057.2 feet, that the total maximum cost was estimated to be $33,077.50, and that one-third of the cost, to be paid by the City and County of Honolulu, would be $10,980.80, and that the maximum rate charged against each front foot of abutting property would be $5.413018, with curbing 300 feet at 45¢ a foot, that the maximum cost of the improvement, exclusive of $2,500, estimated expenses of the engineer, to be paid by the City and County of Honolulu, would be $30,577; that thereafter on said 2d day of August, 1916, such data so furnished was, by resolution, approved by the board of supervisors and a date set for a public hearing before said board, to-wit, August 29, 1916; that thereafter there was published a notice of hearing, which notice showed the general character of the proposed improvement and other details required by law including the notice that it was proposed to

assess property abutting on said portion of Beretania street on a uniform front foot basis at a maximum of $5.413018 per front foot plus a curbing assessment where necessary. It was also stated in said notice that this uniform rate was arrived at after deducting a general contribution by the City and County of one-third of the total cost; that the date fixed for said hearing was August 29, 1916; that the total frontage to be assessed was 4057.2 feet —of this 3051.4 feet were privately owned and 1005.8 feet were represented by property owned by the Territory; that the total abutting area subject to said assessment is 3051.4 feet, the same being owned by parties other than the Territory; that on August 29, 1916, protests against the proposed improvement were filed with the clerk of the City and County of Honolulu by the owners of more than 1775 front feet abutting on said Beretania street; that the said owners consisted of two classes—owners in fee simple representing 1001.4 front feet and owners of leasehold interests representing 774.2 front feet; that on October 25, 1916, by resolution No. 623, the said board of supervisors claims to have passed a resolution purporting to adopt, create, define and establish frontage improvement district No. 5, and defining the kind, extent and general detail of the proposed improvement, declaring that one-third of the entire cost was to be borne by the City and County of Honolulu and that the method of assessment was by frontage, and giving other detailed information of the work to be done; that on October 27, 1916, public notice was duly given that tenders to complete said contract on frontage improvement district No. 5 would be received on November 26, 1916, upon which date only one bid was received, which was in excess of the estimate and was rejected; that on December 12, 1916, the said engineer filed a modified report of such improvement, which modified report was, by resolution No. 665, approved, and the clerk

of the board authorized to call for bids; that the said clerk duly advertised for bids to be received on January 3, 1917, upon which date one bid of $30,500 was received; that on January 9, 1917, said board, by resolution No. 680, purported to accept said bid and directed a corrected map to be prepared by said engineer, showing in detail the proportionate amount per front foot to be assessed against the owners thereof, and a list of all known owners, lessees and occupants of land fronting upon said highway; that on January 15, 1917, said engineer filed a corrected map as directed; that on January 23, 1917, by resolution No. 699, the said board purported to ratify the said report of said assessment; that on February 2, 1917, the said board called a public hearing of property owners interested in the assessments, showing in the notice of said hearing that the actual rate of assessment would be $5.404606 per front foot, at which hearing the board sat as a board of equalization to hear and receive complaints and objections respecting the method of apportionment and the several proposed assessments; that thereafter the said board passed an ordinance purporting to confirm the first proposed assessment, by ordinance No. 118, approved March 1, 1917; that by said ordinance the said board purported to fix the proportion of said cost to be assessed against the properties of the said frontage improvement district No. 5, and against the alleged owners respectively; that the tax assessor of the district of Honolulu claims to have given written notice by letter to and by listing upon the land assessed, of the several owners, of the several amounts due from each, and of the date when the same were payable, to-wit, thirty days from March 20, 1917; that petitioner as owner of 72.5 feet frontage is charged with an assessment of $391.83; that he has refused to pay said assessment and claims the same to be illegal and void; that the map prepared by the said engineer does not show the metes and bounds of the

property of petitioner, to-wit. Lot No. 37, but does show the correct frontage of the same and that the side lines of said lot are lines converging from the front towards the rear of the premises with indefinite and unknown depth and area as to said lot; that the front line does not bear a proportionate relation to the areas of the premises benefited as in the case of side lines of lots running at right angles with the front line; that other lots are greatly benefited in excess of the frontage of the proportion assessed against them compared with the premises of petitioner; that other lots belonging to parties other than petitioner are charged greatly in excess of their proportionate benefit from the said improvement; that as to petitioner and as to the owners of Lots 39, 40, 41, 1, 11, 12, 15, 16 and 18 the assessment is not in proportion to the benefit to the premises assessed, but is illegal, unfair and inequitable; that the sum of $387.40 for the improvement of side streets leading into said Beretania street and the building of a retaining wall and grading of approaches from Kamanuwai Lane was included in said assessment and taxed *pro rata* against all the abutting owners on Beretania street, which assessment against petitioner is without benefit to his property abutting on Beretania street; that the treasurer has advertised for sale the said Lot 37 for the payment of said assessment and will sell the same unless restrained by the court, and the petitioner prays that the assessment against the said lot be set aside and that the treasurer be restrained from selling said lot, to which bill for an injunction the respondents filed an exceedingly voluminous demurrer, the salient and pertinent portions of which and those germane to this decision, summarized, are substantially as follows:

Section II. It affirmatively appears on the face of said complaint or petition and the exhibits thereto annexed or therein referred to that L. L. McCandless (petitioner-ap-

pellant) is not entitled to equitable relief or to any relief in these proceedings by reason of the following facts therein appearing: Paragraph 2—It affirmatively appears that a hearing was duly given to all property owners and others interested on August 29, 1916. Paragraph 4—It affirmatively appears that owners representing but 1001.4 feet out of 4057.2 feet affected, or but 24.6% of the total frontage abutting upon said improvement, filed protests against said improvement at the public hearing of August 29, 1916. Paragraph 5—It affirmatively appears that protests representing 774.5 feet out of 4057.2 feet affected, or but 19% of the frontage abutting upon said improvement, were from lessees, whose interest in said improvement does not appear and whose protests in manner and form and substance as filed have no force and effect under any provision of law or statute. Paragraph 6—It affirmatively appears that the board of supervisors continued to have and did duly exercise jurisdiction according to law and the statutes on and after August 29, 1916. Paragraph 7—It af· firmatively appears that after strict compliance with the statutes and after duly receiving bids for the work to be performed, the board of supervisors duly called and held a public hearing on February 6, 1917, as to the method, amount and apportionment of assessments, at which hearing petitioner failed to appear and at which hearing there were no appearances, protests, complaints or objections made or filed. Paragraph 8—It affirmatively appears that thereafter said board of supervisors "specially found and established that each and every parcel of land subject to assessment abutting upon said frontage improvement is or will be specially benefited by said improvement to the amount of the respective assessment therefor." Paragraph 10—It affirmatively appears that petitioner and his attorneys were at all times fully notified and apprised of the actions of the board of supervisors and the other officers,

agents and servants of the City and County of Honolulu. Paragraph 11—It affirmatively appears that said assessments were uniform by frontage, which method of apportionment was confirmed by the board of supervisors after two hearings and as to which method of apportionment no protest, complaint or objection was ever made or filed before said board.

Section XI. Said complaint or petition and the matters therein contained are barred by lapse of time by reason of section 1812 Revised Laws of Hawaii 1915 from any review in these proceedings.

The petitioner-appellant claims that the assessment should be declared void for the following reasons, which we shall consider in their order:

First. "That the assessment is void as in violation of the Fifth Amendment of the Federal Constitution in that it deprives a property owner of the equal protection of the laws, and deprives him of property without due process of law."

The Fifth Amendment to the Constitution guarantees that "No person shall * * * be deprived of life, liberty or property without due process of law: nor shall private property be taken for public use without just compensation." The phrase "equal protection of the laws" occurs in the Fourteenth Amendment and not in the Fifth.

It has long been established that local assessments for street improvements are by virtue of the taxing power. This is conceded by the petitioner-appellant in his brief. "The exercise of the power of assessment after the paving of an existing street is an evidence of the taxing power and not of the law of eminent domain" (Brief, p. 7). "The controversy which existed over this point should be regarded as closed from a study of the cases" (ib. p. 7).

The provision in the Constitution of the United States that private property shall not be taken for public use

without just compensation is the right of eminent domain, and this right which is denominated the eminent domain is distinguished from the right to take private property for taxes. *People* v. *Mayor, etc.*, 4 N. Y. 419, where the two rights are contrasted. And from assessments for local improvements: *Nichols* v. *City of Bridgeport*, 23 Conn. 189; *State* v. *Blake*, 36 N. J. L. 442; *Chambers* v. *Satterlee*, 40 Cal. 497. Therefore under this claim of the petitioner-appellant we will confine ourselves to the question of whether or not the assessment was created by "due process of law."

The legal import of the phrase "due process of law" is the same both in the Fifth and in the Fourteenth Amendments to the Constitution. In the case of *French* v. *Barber Asphalt Paving Co.*, 181 U. S. 324, the court says: "The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency. * * * We can see in the determination reached possible sources of error and perhaps of injustice, but we are not at liberty to say that the tax on the property was imposed without reference to special benefits. * * * It may be that the process by which the result was reached was not the best attainable, and that some other might have been more accurate and just, we cannot for that reason question an enactment within the general legislative power." In *Davidson* v. *New Orleans*, 96 U. S. 97, cited and approved in *French* v. *Barber A. P. Co.*, it was held that "neither the

corporate agency by which the work is done, the excessive price which the statute allows therefor, nor the relative importance of the work to the value of the land assessed * * * nor that the assessment is unequal as regards the benefits conferred, nor that personal judgments are rendered for the amount assessed, are matters in which the State authorities are controlled by the Federal Constitution."

From a review of the various cases upon the subject we hold that the assessment was not repugnant to or in conflict with the "due process of law" clause of the Fifth Amendment to the Constitution.

The second claim of petitioner-appellant is "that it (the assessment) is void because the assessment statute requires the assessment to be made according to benefits, whereas the assessment charges him in substantial excess of benefits."

This is a question of fact and we are unable to glean from the petition any evidence to support it. Exact equality of taxation is not always obtainable, and for that reason the excess of cost over special benefits, unless it be of a grossly inadequate character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment. And even when the assessment is grossly disproportionate to the benefits the objection must be made within the statutory time. *von Damm* v. *Conkling,* 23 Haw. 487.

The third contention of petitioner-appellant is that "The assessment is void because the protests filed were in excess of sixty per cent. of the frontage privately owned and therefore was barred by its own terms."

The petition alleges that of the total frontage to be assessed 3051.4 feet were privately owned; that on August 29, 1916, protests against the proposed improvement were filed by the owners of more than 1775 front feet; that the said

owners consisted of two classes—owners in fee simple representing 1001.4 front feet and owners of leasehold interests representing 774.2 front feet.

Section 1795 R. L. 1915, as amended by Act 164 Session Laws of 1915, provides that "If the owners of fifty-five per cent. of the total frontage or area to be assessed for such improvements shall at the hearing or prior thereto file with the supervisors a written protest duly acknowledged by such owners against the making of such improvement or against any part of the plan therefor, the same shall not be made contrary to such protest. If the protest is against the making of any improvement, the same shall not be made, and the proceedings shall not be renewed within six months thereafter unless under the provisions of Section 1797 of this chapter."

The petitioner-appellant contends that the word "owners" in the statute should be held to embrace and include lessees and tenants. This construction we do not regard as tenable or warrantable. There is not anything in the statute to indicate that the word "owners" was not used in its ordinary and familiar sense nor is there anything in the petition to show that any beneficial result would be achieved by placing a different interpretation upon it. "One who owns in fee" (*St. Paul & S. C. R. R. Co.* v. *Matthews,* 16 Minn. 303) ; "The person owning the fee" (*Page* v. *W. W. Chase Co.,* 145 Cal. 578-583) ; "A person who has an estate in fee simple" (*Bowen* v. *John,* 201 Ill. 292, 295). And it is reasonable to assume that this was the interpretation placed upon the word "owners" by the legislature of the Territory, for by Act 239 Session Laws of 1917, section 1795 of the Revised Laws of Hawaii is amended to read "Any lessee of any property to be assessed under this chapter, who by the express terms of his lease must pay the kind of assessments contemplated by this chapter shall be subrogated to all the rights of such owner to protest by filing with the board

prior to or at the hearing a certified copy of his lease, together with a citation of the book and page of the public record of the same if it be recorded."

The fourth claim of petitioner-appellant is "That the action of appellant was not barred by the thirty day statute of limitations."

Section 1812 R. L. 1915 provides that "No action or proceeding at law or in equity to review any acts or proceedings or to question the validity or enjoin the performance of any act or the issue or payment of any bonds, or the levy or collection of any assessments authorized by sections 1793-1813, or for any other relief against any acts or proceedings, done or had under said sections, whether based upon irregularities or jurisdictional defects, or otherwise, shall be maintained unless begun within thirty days after performance of the act or the passage of the resolution or ordinance complained of, or else be thereafter forever barred."

As appears by the petition filed herein the board of supervisors, after due notice, sat on February 2, 1917, as a board of equalization to hear and receive complaints and objections respecting the method of apportionment and the proposed assessments. At that hearing no protests, complaints or objections were made or filed by any person, that the assessment ordinance for this improvement was approved March 1, 1917, and written notice sent to the petitioner-appellant that he was assessed for $391.85, which he refused and still refuses to pay. That said ordinance was duly published, the last day of publication being March 20, 1917. We are of the opinion that the limitation began to run from March 20, 1917, the last day of publication of the assessment ordinance, hence more than thirty days transpired between the passing of the ordinance complained of and the commencement of this suit. That the limitation was reasonable and constitutional. The petitioner-appel-

lant's injury, if any, was due to his own laches and negligence and did not proceed from the thirty-day limitation. This view is amply sustained by the authorities. *Hildreth* v. *Longmont,* 47 Colo. 79; *City of Denver* v. *Campbell,* 33 Colo. 162; *Rockwell* v. *Junction City,* 92 Kan. 513, reaffirmed in 93 Kan. 142, 268.

The fifth contention of petitioner-appellant has been necessarily passed upon in reviewing the other claims of the petitioner-appellant and need not be further considered.

The decree sustaining the demurrer is affirmed.

*P. L. Weaver* and *E. C. Peters* (*P. L. Weaver* and *Peters & Smith* on the brief) for petitioner-appellant.

*A. M. Cristy,* First Deputy City and County Attorney, for respondents.