## BISHOP TRUST COMPANY, LIMITED, AND GUARD-IAN TRUST COMPANY, LIMITED, *v.* D. L. CONKLING, TREASURER OF THE CITY AND COUNTY OF HONOLULU, AND THE CITY AND COUNTY OF HONOLULU.

### No. 2075.

Argued September 6, 1933.    Decided September 28, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE CASE
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY BANKS, J.

This is an original submission under the statute on

agreed facts. The basic cause of the controversy is the voluntary undertaking by the City and County of Honolulu to construct a sanitary sewerage system in Palolo Valley in the district of Honolulu, described as Improvement District 36. In the prosecution of this enterprise the city and county levied an assessment of $3283.07 against certain land, situated within the assessment district, owned by the Bishop Trust Company, and upon which the Guardian Trust Company holds a mortgage. On the 28th day of April, 1932, the city and county instituted proceedings in eminent domain for the purpose of acquiring, as an essential part of the enterprise, a perpetual easement in, over and under a portion of land owned by the Bishop Trust Company, designated as Mahana Road, this road being also in the district.

The Bishop Trust Company and the Guardian Trust Company contend that the assessment against the land was unauthorized by law and is therefore void, and the Bishop Trust Company contends that the proceedings in eminent domain were likewise unauthorized by law and should not be further prosecuted.

After certain preliminary steps, which need not now be considered, the contract for the construction of the improvement was on the 17th day of March, 1932, finally awarded to the J. L. Young Engineering Company, Limited, for the total lump sum of $128,234.90.

The contention of the trust companies which we will first consider is that the City and County of Honolulu was without legal authority to construct, of its own volition, sanitary sewers and therefore whatever it did in connection with the Palolo Valley sanitary system, including the assessment referred to, the condemnation proceedings and the awarding of the contract, was *ultra vires.*

In confirmation of this contention our attention is called to section 1851, R. L. 1925, as amended by Act 191,

L. 1925. In this amendment the legislature designated the kind of improvements which the City and County of Honolulu might voluntarily construct at the cost of privately owned property. This designation includes the opening, extension, widening or alteration of streets, alleys or other highways; the grading, paving, curbing or macadamizing or otherwise improving the whole or any part of any existing public street, alley or other highway or sidewalk in the district of Honolulu, except at Moanalua, and the construction or improvement of storm drainage systems. It does not include sanitary sewerage systems. It may be conceded, therefore, that so long as this Act remained unchanged by amendment the city and county was without power to construct sanitary sewers.

In reply it is contended by the city and county that by a legislative enactment which became effective on April 22, 1927, the kind of improvements which the city and county was by the Act of 1925 empowered to construct was enlarged by adding sanitary sewerage systems. Section 1 of this Act (Act 98, L. 1927) provides that "Chapter 119 of the Revised Laws of Hawaii 1925, as amended by Act 191 of the Session Laws of 1925, is hereby further amended by adding a new section thereto, to be known as Section 1851A, to read as follows: 'Section 1851A. Sewers included. The term "storm drainage system" whenever used in this chapter shall include "sanitary sewerage system;" provided, however, that the board of supervisors shall not be required to construct sanitary sewerage system under the provisions of this chapter, except as provided under sections 1856 and 1856A.' "

It is clear that the legislature intended by the enactment of section 1851A to add sanitary sewerage systems to the improvements enumerated in the Act of 1925. If this section had gone no further than to declare that the

term "storm drainage system" should include "sanitary sewerage system" not even a plausible argument could be made that the city and county was, after its enactment, without power to construct a sanitary sewerage system according to the provisions of Act 191, L. 1925, including the power to charge the cost of the system, even though voluntarily constructed, to privately owned property.

It is contended, however, by the two trust companies that the proviso in section 1851A, namely, that "the board of supervisors shall not be required to construct sanitary sewerage system under the provisions of this chapter, except as provided under sections 1856 and 1856A," discloses a legislative intent to limit the power of the city and county to construct sanitary sewerage systems to the provisions of sections 1856 and 1856A. In other words, that the word "required," as it is used in the proviso, should be given the meaning of "permitted" or "allowed" and that the proviso should be construed as though it read: "Provided, however, that the board of supervisors shall not be permitted or allowed to construct sanitary sewerage systems under the provisions of this chapter except as provided under sections 1856 and 1856A." Section 1856 relates to what is required of the board of supervisors in the event sixty per cent of the owners of the property affected by the improvement request its construction and section 1856A relates to what is required in the event the improvement is requested by one hundred per cent of such property owners.

It is conceded that so far as the Palolo sanitary sewerage system is concerned no request was made for its construction by any of the property owners within the district but that it was undertaken by the board of its own volition.

If the view of the two trust companies regarding the meaning of the proviso in section 1851A should be adopted

the effect would be to exclude sanitary sewerage systems from those improvements which the city and county was authorized to voluntarily construct and to limit its power to construct such systems to the instances mentioned in sections 1856 and 1856A. There is no apparent reason why the legislature should have intended to do this. On the contrary, there are strong reasons for believing it had no such intention. It would be most remarkable if the legislature was willing to empower the municipality to voluntarily take action in the matter of storm drainage and other kinds of public improvements which are not of a sanitary nature and leave the power to take action regarding sanitary sewers, upon which the health of every person living within its borders may depend, to the whims of property owners.

The only argument advanced in support of the meaning we are asked to give the word "require" in the proviso is that the inclusion of "sanitary sewerage system" within "storm drainage system" *ipso facto* brought sanitary sewerage systems within the improvements which the city and county had been given the power to construct of its own volition and which it *must* construct if requested by the required per centage of property owners and therefore unless the proviso was intended as a limitation upon the power to construct sanitary sewers it served no purpose. The proviso, while perhaps unnecessary, nevertheless does not cast any doubt upon the evident intention of the legislature that the voluntary construction of sanitary sewers like the voluntary construction of storm drainage sewers should be within the powers of the city and county and that the exercise of this power should be mandatory when requested under the provisions of sections 1856 and 1856A. In other words, the intention, so unmistakably expressed in the first clause of section 1851A, was not by the proviso abandoned and another and different inten-

tion substituted, but was emphasized. This is often both the purpose and the effect of repetition.

The remaining contentions of the two trust companies are (1) that the award of the contract on March 17, 1932, to the J. L. Young Engineering Company was unauthorized for the reason that the board of supervisors on that date had not acquired the property necessary for the installation of the sewer system nor had a petition condemning the necessary property been filed; (2) that the city and county had no power or authority to pass Resolution No. 398 adopting the preliminary report of the engineer of plans, surveys and improvements; (3) that the proceedings to condemn a right of way over Mahana road were premature.

The facts upon which the first contention is predicated are admitted in the agreed statement of facts. In support of the contention we are directed to section 1857, R. L. 1925, as amended by Act 191, L. 1925, the pertinent portion of which is as follows: "In case such improvements so determined upon shall require the acquisition of any new land therefor, the board of supervisors shall acquire the same before final award of the contract, either by deed, or other voluntary conveyance from the owners thereof, or it may, at its option, and in the name of the City and County of Honolulu cause condemnation proceedings to be brought to acquire the same in like manner as by law now or hereafter provided for like proceedings when brought by the superintendent of public works, and after the filing of the petition in such proceedings the final award of the contract may be made. If the cost of acquiring such land shall exceed the estimate therefor, the board may provide for such excess cost by general appropriation."

In regard to the second contention it appears from the agreed statement of facts that Preliminary Report No.

856 of the engineer's plans, surveys and improvements is dated August 4, 1931, and was on that day filed with the board of supervisors. The board on August 11, 1931, passed Resolution No. 398 adopting the report. Our attention is called to section 1854, R. L. 1925, as amended by Act 191, L. 1925, which provides that "such report, when so furnished and filed with the board, shall not be acted upon until one week has elapsed from the date of the filing of the same." It is claimed that one week not having elapsed from the filing of the engineer's report to the date of its adoption the action of the board in adopting it was without authority.

It is agreed in the statement of facts that so far as this submission is concerned neither of the trust companies instituted any proceedings questioning the validity of the several acts and proceedings hereinabove referred to until the filing of the agreed statement of facts, which was on August 31, 1932.

It is contended by the city and county, certainly so far as contentions one and two are concerned, that the trust companies are barred under section 1872, R. L. 1925, from now making these contentions. The section referred to provides: "Limitation time to sue. No action or proceeding at law or in equity to review any acts or proceedings or to question the validity or enjoin the performance of any act or the issue or payment of any bonds, or the levy or collection of any assessments authorized by sections 1851-1873, or for any other relief against any acts or proceedings, done or had under said sections, whether based upon irregularities or jurisdictional defects, or otherwise, shall be maintained unless begun within thirty days after performance of the act or the passage of the resolution or ordinance complained of, or else be thereafter forever barred."

The attacks made on the assessment in contentions

one and two do not relate to the power committed to the City and County of Honolulu to construct sanitary sewers at the cost of private property but relate to acts of procedure done in the exercise of the power. It is conceded that section 1872 does not debar a property owner from challenging by judicial procedure an assessment to which he has a right to object when no power is vested in the municipality to construct the improvement. The reason for the rule under which the concession was made is that when the power is lacking it cannot be conferred by failure to object to its exercise. This reason, however, does not exist when the assessment is resisted because of mere irregularities of procedure and therefore the rule has no application. In such case, if the objections are seasonably made, the irregularities may be cured and the construction of the improvement legally proceed. If the two trust companies had, within the statutory period, protested against the irregularities of which they now complain, and the board of supervisors had neglected or refused to correct them, their position would be quite different. Having failed to do this they are barred from the relief they now claim.

In 5 McQuillin, Mun. Corp. (2 ed.), § 2271, the author said: "Statutes usually prescribe the time within which actions to question the validity of the assessment shall be brought, and failure to proceed within the time provided precludes property owners from thereafter attacking the assessment for irregularities."

In *McCandless* v. *City and County,* 24 Haw. 524, the court had under consideration section 1812, R. L. 1915, which is identical with section 1872, R. L. 1925. In that case the complaining property owner had allowed more than thirty days to elapse between the final publication of the assessment ordinance and the commencement of the suit. The court held that the suit was barred, saying in

one of its syllabi: "The legislature has power to prescribe the time within which actions or proceedings at law or in equity to review, question the validity or enjoin the enforcement of any improvement ordinance shall be instituted."

In regard to contention three, it appears from the agreed statement of facts that the resolution authorizing the institution of eminent domain proceedings for the acquisition of an easement over Mahana road was introduced at a meeting of the board of supervisors on April 12, 1932, and passed first reading. It was published but once, namely, in the Honolulu Advertiser on April 14, 1932, and passed second and third readings on April 19, 1932. It was approved by the mayor on the same day. On April 28, 1932, the proceedings in eminent domain were instituted.

It is the contention of the two trust companies that the adoption of the resolution was, under section 815, R. L. 1925, unauthorized for the reason that by the terms of that section the resolution should have been published for at least *three* successive days. The section referred to is as follows: "Whenever the board of supervisors of any county or city and county shall deem it advisable or necessary to exercise the right of eminent domain in the furtherance of any governmental power heretofore or hereafter granted, such proceedings may be instituted as provided in section 816, after such board of supervisors has authorized such suit by resolution duly passed and approved. Such resolution, in the case of the city and county of Honolulu, shall, after its introduction, be published in a newspaper or newspapers, with the ayes and noes, for at least three successive days (Sundays and legal holidays excepted) before final action upon the same, and in the case of other counties, be published in a newspaper, with the ayes and noes, for at least one day (Sundays and

812

legal holidays excepted) before final action upon the same."

In reply it is contended by the city and county that section 815 was impliedly amended by Act 30, L. 1927, so as to limit the time required for publication to one day only. The pertinent portion of this Act is as follows: "Section 1. Section 1733 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows: 'Section 1733. Publication before final action. Every bill or resolution providing for * * * the exercise of the power of eminent domain * * * shall, after its introduction, be published in a daily newspaper with the ayes and noes once (Sundays and legal holidays excepted) before final action upon the same. * * * ' "

Section 1733 is a part of chapter 118, R. L. 1925, which relates solely to the City and County of Honolulu. The legislature therefore, by amending this section, changed the period of publication of every bill or resolution providing for the exercise of the power of eminent domain from three successive days to one day. This being so the amending statute, by necessary implication, also repealed the requirement of a three days' publication contained in section 815. Both of these sections relate to identically the same subject, namely, the exercise of the power of eminent domain and being in conflict both requirements cannot stand. The board of supervisors having complied with the later requirement it must be held that the publication of the resolution in question for one day was sufficient.

It is agreed that the instant submission shall be considered as a suit in equity to set aside and have declared void the assessments levied against the property owned by the Bishop Trust Company, Limited, as trustee, to enjoin the collection of said assessments and enjoin the further proceedings in eminent domain. It is our opinion that

the relief prayed for should not be granted. A decree in conformity with this opinion will be signed upon presentation.

*M. E. Winn* (*Winn & Nowell* on the briefs) for the trust companies.

*L. P. Scott,* Deputy City and County Attorney (also on the brief), for the city and county treasurer.